CHARLES E. BOWMAN, PLAINTIFF IN ERROR, V. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

Criminal Law: NEW TRIAL: REMARKS BY COURT. The defendant was arraigned upon an indictment for a statutory felony, whereupon his counsel presented a motion for a continuance of said cause; and in support thereof presented and read the affidavit of the prisoner, in which he swore that he could not safely proceed to trial at the then present term of the court for the want of certain material witnesses, among the rest, Calvin Bowman, the father of the prisoner. Whereupon the court, or judge thereof upon the bench, in the presence of certain of the regular panel of petit jurymen, some of whom afterwards sat in the trial of the cause, said, stated, and declared that said affidavit was false; that defendant's father had told him that he would have nothing to do with the defendant; that defendant had committed perjury, and that a grand jury would be called to investigate the same. *Held*, Error and a new trial awarded.

ERROR to the district court of Harlan county. Tried below before GASLIN, J.

*John Dawson,* for plaintiff in error.

*William Leese, Attorney General,* and *W. S. Morlan,* for the state.

COBB, J.

The plaintiff in error was indicted at the May, 1885, term of the district court of Red Willow county, for the crime of dealing, playing, and practicing a certain game with cards, said game being then and there dealt, played, and practiced the same and in such manner as the confidence game and swindle known as three card monte, etc. Upon his plea of not guilty to said indictment, he was, at the adjourned term of said court in the month of June following, tried to a jury, which found him guilty; and upon the overruling by the court of his motion for a new trial he was sentenced to a term of three years in the penitentiary. He brings the cause to this court on error.

There are nine errors assigned, but it is deemed unnecessary to set them out at length here, as we think the case turns on the first and ninth assignments, which are as follows:

"1. The court erred in overruling the plaintiff's challenge to the jurors Thomas Clark and Thomas Cott."

"9. The court erred in stating that this plaintiff (in error) had perjured himself in the presence and hearing of some of the jurors in said cause."

It appears from the affidavits of the defendant, plaintiff in error, and one of his counsel, that at the term of the court at which the indictment was found, and at which the regular panel of petit jurors who tried the cause were in attendance, and on or about the 15th day of May, 1885, it being one of the days of the regular May term of said court, a jury was called and placed in the jury box for the purpose of hearing the said cause, and giving a verdict in

the same; and among said jurors were Thomas Clark and Thomas Cott, who sat as jurymen upon the trial of said cause when it was tried on the 22d day of June of said year; that upon the occasion first aforesaid, and in the presence and hearing of the said first mentioned jurymen, especially the said Thomas Clark and Thomas Cott, the defendant, plaintiff in error, caused to be read a motion which was presented and filed in his behalf for a continuance, supported by an affidavit for want of material witnesses; that among the witnesses whom said defendant stated in his said affidavit to be material to his defense, and whose attendance could not be procured at the said term of court, was Calvin Bowman, the father of the defendant; that upon the reading of the said affidavit, the court, or perhaps more correctly speaking the presiding judge of said court, then sitting upon the bench, in open court, in an excited manner, said that said affidavit was false; that defendant's father had told him that he would have nothing to do with him, the defendant; that defendant had committed perjury and that a grand jury would be called to investigate the same on the 22d day of the following month; that these remarks of the court were made in the presence and hearing of the said jurors, Thomas Clark and Thomas Cott, who afterwards, against objection and challenge for cause of the said defendant, were permitted to sit as jurors upon the trial of said cause.

It also appears from the bill of exceptions that upon selecting the jury for the trial of this case both of the said jurymen, Thomas Clark and Thomas Cott, were sworn and examined on their *voir dire*. They each testified that they were present, heard, and still remembered the remarks of the court or presiding judge hereinbefore set out; but each denied any knowledge of the guilt or innocence of the accused, having formed or expressed any opinion of his guilt or innocence, or having any bias or prejudice for or against him. They were both challenged

for cause by counsel for the defendant, which challenge was in both cases overruled by the court. The said jurymen were both sworn and sat in the case. It also appears that in selecting the said jury the said defendant used and exhausted all the peremptory challenges allowed him by statute.

There was no error on the part of the court in overruling the challenge in the case of either of the said jurors. Tested by the rule laid down in section 468 of the criminal code, there was no ground for challenge for cause in the case of either of them. It by no means follows that it was proper or justifiable on the part of the court to make the remarks of and concerning the prisoner about to be placed upon trial, in the presence and hearing of jurymen, either already drawn or liable to be drawn as jurymen in the case, as set out in the bill of exceptions as aforesaid. Indeed, it adds to the danger and impropriety of the use of such expressions by the court, that the mischief liable to flow from them is an insidious one, the remedy for which is not provided by statute or the rules of practice. Both of these jurymen testified on the *voir dire* that they had not either formed or expressed an opinion as to the guilt or innocence of the accused of the crime of which he stood charged; but they did not state, nor could they be properly asked on the *voir dire*, that they did not agree with the court that he was a perjurer, or that his father had presumably become so disgusted with his conduct that he abandoned him to his fate and would have nothing more to do with him. The sole object for which men are selected and called to serve on juries is that the truth may be ascertained and declared upon the points in dispute between the parties. This truth must be ascertained, not from the previous knowledge or wisdom of the jurymen, but from the testimony of sworn witnesses, and the examination of documents duly authenticated and produced under forms of procedure and the control of the

Bowman v. State.

court. For this purpose it is of the first importance that each juryman should enter the box as near as possible free of previously acquired knowledge, or of that which he believes to be, but which may or may not be, knowledge of the facts of the case. Also, as free as possible of either knowledge or opinions of collateral facts calculated to either stimulate or retard the mind in the reception of either evidence or argument favorable to one party or the other to the controversy.

It is true, and it is a truth greatly to the credit of the people, that there is no officer or person, however high in the state or nation, who possesses the respect of or influence over all classes of the people equal to the district judge. When upon the bench he represents the majesty and the power of the law and of the state directly to the people. This condition, doubtless, depends in a great degree upon that principle in our judicial system which, in the great majority of cases, makes the jury the sole judges and arbiters of matters of disputed fact between the parties, leaving to the judge or court the serene field of the application of these facts, when found, to the principles of law by which they should be governed. Yet, while such is the case, it is a truth which has been often remarked with admiration and wonder, that the people, and especially jurors, almost always possess the most implicit confidence in the power and prescience of the trial judge to properly weigh and apply the evidence and understand the facts in the case.

Such being the high regard of the people, and especially of the juryman, for the trial judge, can it be conceived that, upon the arraignment of a prisoner for a felony, and his presenting his affidavit for a continuance, the court may solemnly declare that the prisoner has added corrupt perjury to the crime for which he is already indicted, and threaten to have a grand jury in attendance for the purpose of indicting him for such perjury, without such declaration of

the court prejudicing the defendant in the minds of the jurors present and hearing such declarations? I think not. It may be granted that such declaration or expression of the court did not cause the future juror to form or express an opinion as to the guilt or innocence of the accused, but it did prevent him from entering the jury box with his mind a *tabula rasa* so far as the guilt or innocence of the prisoner was concerned, whether he was himself aware of what had been written thereon or not.

I come to the conclusion, therefore, that it was error on the part of the court to make in the presence of jurors of the regular panel the declarations and statements in regard to the defendant which he is shown to have made. The judgment of the district court is therefore reversed, and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.

THE other judges concur.