TYSON, Judge.
The indictment charged the appellant with the robbery of W. O. Sanders by putting him in fear and by taking $140.00 in money from his person. The appellant’s request for Youthful Offender treatment was denied after a hearing. The appellant was found guilty as charged, and the jury’s verdict fixed punishment at ten years imprisonment. The trial court then set sentence in accordance with this verdict.
The event giving rise to this indictment took place on January 23, 1975, between 3:30 and 4:00 P.M., at W. O. Sanders Grocery, a business establishment located in Colbert County, and owned by the victim, W. O. Sanders. The appellant entered the store armed with a gun and exclaimed, “This is a holdup. Nobody not to move.” (R.p. 41) The appellant made the one customer in the store at the time lie down on the floor and then at gun point instructed W. O. Sanders to put the money contained in the cash register in a sack. The appellant, after making Mr. Sanders also lie down on the floor, then departed with the money. (R.p. 42)
I
The appellant grounds his argument for reversal upon remarks made by the trial judge to the appellant in the presence of the jury venire concerning the appellant’s failure to have subpoenaed witnesses at the time his case was called for trial. After these remarks were made, the appellant’s counsel timely moved for a mistrial on the grounds that the trial judge’s comments in the presence of the jury venire (from which the appellant’s jury was later struck) were prejudicial to the appellant. Appellant’s motion was overruled, and the judge at this point gave no instructions to correct the possibility of error at that time. The remarks in question occurred on September 9, 1975, two days before the trial began and appear in the following recital from the record:
“BY THE COURT: Court will come to order. Now, Jarmon, your attorney announced a moment ago that he was not ready. Yesterday, early in the day, he and the District Attorney — Deputy District Attorney — discussed the case here at the bench, and Mr. Gardner stated that he was not ready — that there was some correspondence — verbal or some sort of communication between himself and you relating to witnesses. And in effect words more or less like this, that you had — you told him that you wanted some witnesses here and that you gave him the names. And that he did not remember you giving him the names. And whereupon it was suggested that he go on and get his subpoenas out and he could possibly get the witnesses here. And later it was divulged that you did not — the addresses of these witnesses were not given — that is, where they could be found. Now, that was yesterday. Nearly or I would say at least 20 hours ago. Now, as to what was said and not said is between you and Mr. Gardner. We don’t— we don’t have any opinion as to what the facts are. However, often times, a witness is subpoenaed to come in immediately and the witness is in Court within say two hours. Now, your witnesses could be somewhere else outside Colbert County, that’s true, but at least the Clerk’s Office and the Sheriff’s Office have a right to know where these witnesses can be found. It has been tried many times and I do not say that that’s the case here — but it’s been tried many times in the law where fictitious names are given as witnesses for the purpose of delaying the proceedings. The fact that they are fictitious they can’t be found — the person subpoenaing the witness saying well, we’ve got to have these witnesses if we are to proceed. Now, it appears to the Court, first, as to what took place be *899 tween you and Mr. Gardner, that’s your business. But even so, after the Court suggested that the witness subpoenas go out yesterday, I inquired of Mr. Gardner later about the matter, and he says we don’t know where they are. They don’t know where they can find them. Now, without determining — at this time trying to determine — that these witnesses are material or that the defense that you and Mr. Gardner have done everything that the law says that you should do or must do in getting ready for the trial, you or Mr. Gardner — I would like to have you put in the record the materiality of these witness — what you know about the whereabouts of these witnesses — first, let me ask you this Mr. Gardner. Can you make a showing on these witnesses?
“MR. GARDNER: Yes sir. I can demonstrate to the Court our purpose—
“BY THE COURT: I didn’t ask for a demonstration. I said, can you make a showing?
“MR. GARDNER: Yes sir.
“BY THE COURT: Can you accept a showing?
“MR. PATTON: I don’t know what his showing is, at this time. I would like to talk to these witnesses. I never heard of them before. I don’t know who they are.
“BY THE COURT: All right, now I’ll give you a few minutes in all justice to the defendant if something has gone awry here and it can be solved by a showing, it’s permitted, so I’ll give you a few minutes to talk — the attorneys — to see if it can be done.
“MR. GARDNER: Your Honor, for the record’s sake, I would like to move for a mistrial at this time on the grounds that the Court’s comments in regard that the possibilities the defendant may have brought forth these witnesses in an effort to defraud the Court or delay the trial, I feel that these implications could be prejudicial in the minds of the jury ve-nire. I would like the record to show that these comments were made by the trial judge in the presence of the jury venire and we respectively move for a mistrial at this time on those grounds.
“BY THE COURT: Your motion is overruled. All right, go ahead on your showing.
“MR. GARDNER: Your Honor, we wish to have the following witnesses called. They were subpoenaed. James Kennedy, Keith Smith, Levert Lewis, and Ann Pool. We expect their testimony to show that at the time of the—
“MR. PATTON: I’m not going to sit here and let Mr. Gardner make speeches to the jury about what he expects the evidence to show. I agree on him showing it to the jury, but it certainly is not going to go to the jury venire at this time and I haven’t agreed to it, and I don’t know if these witnesses have ever been subpoenaed ; I don’t know — have they ? Have they been subpoenaed?
“MR. GARDNER: Of course not! That’s what the whole process if (sic) about right now.
“BY THE COURT: Well, I think—
“MR. PATTON: Judge, this case has been set for trial—
“BY THE COURT: I don’t think you need' any speeches. If you will — both of you, now, as I requested a moment ago, go outside and discuss the showing.”
The following day the appellant’s case was sounded, and again the appellant’s counsel indicated that they were not able to proceed due to the absence of the appellant’s witnesses. The record indicates that subpoenas had been served on these witnesses, but they nevertheless did not appear. (R.p. 20) The court, on its own motion, issued an attachment for these witnesses then adjourned for the day. (R.p. 21)
*900 On September 11, 1975, during the voir dire examination of the prospective jurors by appellant’s counsel, the record reflects the following:
“MR. GARDNER: . . . Another question, ladies and gentlemen, I would like to ask you I don’t want to make anybody mad, but I’ve got to ask you this question — do any of you feel like that because Mr. Patton is the Assistant District Attorney, and because he is an employee of the state of Alabama, do any of you feel like that because of this, that you might place more weight on what Mr. Patton says than what I say? In the trial of this case. I’m not a state employee. I’m working for this man here today. I do not work for the state of Alabama. Do any of you feel like that possibly, his position as a state employee might cause you — possibly—even possibly — to give more weight to what Mr. Patton has to say before this jury?
“(No one answered)
“MR. GARDNER: One other question and I will sit down. I would like to know if any of you feel like that what transpired here yesterday afternoon, might in any way have any effect whatsoever on your opinion as to the guilt or innocence of this defendant today during this trial ?
“(No one answered)
“BY THE COURT: Anything else by either side?
“(No one answered)
“BY THE COURT: All right, the jury will be struck at this time, the state strikes one first and the defendant two.”
After the jury had been struck, the following remarks were made by the court:
“BY THE COURT: Is the state satisfied with the jury?
“MR. PATTON: Yes sir.
“BY THE COURT: And the defendant?
“MR. GARDNER: Yes sir, we are.
“BY THE COURT: I didn’t understand • you.
“MR. GARDNER: I said, yes sir, we are.
“BY THE COURT: All right, ladies and gentlemen — you that are in the box, you have been duly empaneled by law as the jury to sit and try this case. At this time the rest of the jury venire is excused. You may go- — those that are not sitting in the box — you are excused for the term. That means you are through. Before you leave, let me thank you for your attendance on the Court on behalf of all the Court officials in the county and state. Your diligence, your prompt attention to your duty — you may go now and make your claim for attendance at the Clerk’s Office which is across the hall and in the corner on my right. You’re excused. Now, this is just the jury ve-nire. That’s all. I ask that all the parties having cases, witnesses and attorneys, please remain. I’m going to sound this docket. You may go.
“(At this time the rest of the jury venire left the courtroom)”
A defendant has a duty to give whatever information he has concerning his witnesses to his counsel in order to have his defense ready when his case is called for trial. Johnson v. State, 54 Ala.App. 586, 310 So.2d 509 (1975). Also, Thigpen v. State, 49 Ala.App. 233, 270 So.2d 666 (1972). A trial judge is not a robot without emotional reaction, and his impatience with excessive delay caused by a defendant derelict in this duty is a natural and understandable reaction. Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (1973). See also Phillips v. Beene, 16 Ala. 720 (1849). But a trial judge must be ever aware that he wields great influence upon a jury and that his slightest word or intimation may injuriously affect the substantial rights of the defendant. In view of this unquestionable influence, any declaration of the court prejudicing the defendant in the minds of the *901 jury is error which would of necessity effect a reversal. Dennison v. State, 17 Ala.App. 674, 88 So. 211 (1921); Phillips v. Beene, supra. We note, too, that it makes no difference that the court’s prejudicial remarks are made before the jury is impaneled. Two early cases indicate that prejudicial remarks, if heard by the jurors who actually try the case, have the same effect whether made while the jury is in the box or outside the railing of the courtroom. Allen v. United States, 115 F. 3 (9th Cir. 1902); Bowman v. State, 19 Neb. 523, 28 N.W. 1 (1886).
However, after carefully reviewing the record and weighing the circumstances surrounding the alleged infraction, the remarks made by the trial judge in the instant case, though not here condoned, do not in our judgment constitute reversible error.
We do not believe that the court’s remarks were intentionally calculated to deprive the defendant of a fair and impartial trial as guaranteed by the Constitution of this state. Rather they were made in an attempt to insure that this case and all cases on the criminal docket for the week were disposed of both judiciously and expediently. Moreover, neither can it be said that the remarks in question prevented the prospective jurors from entering their service as petit jurors with clear and open minds insofar as the guilt or innocence of the appellant was concerned. As the record here indicates, the trial court permitted extensive individual examination of the prospective jurors. During this voir dire examination, appellant’s counsel asked if the prior transactions of the court, concerning the delay in the proceedings, “might in any way have any effect whatsoever on your opinion as to the guilt or innocence of this defendant. . . . ” (R.p. 34) The silence on the part of all the jurors indicates the the remarks, made by the court two days prior to this questioning, did not inject into anyone’s mind prejudice against the appellant. Furthermore, when appellant’s counsel was subsequently asked at the close of voir dire if he was satisfied with the jury, he announced, “Yes sir. We are.” (R.p. 35) This response, coupled with the fact that no further objections were made by counsel or other motion in regard to this matter, infers that even though counsel felt the remarks were prejudicial error at the time made, this error had been cured by the allowance of extensive voir dire examination. Zuck v. State, (1976) 57 Ala.App. -, 331 So.2d 777, cert. denied, 295 Ala. -, 331 So.2d 796; Murphy v. Florida, (1975), 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed. 2d 589.
II
This Court per Harwood, J., in Tunstill v. State, 33 Ala.App. 460, 34 So.2d 857, cert. denied 250 Ala. 421, 34 So.2d 859, observed:
“ ‘. . . Thomas v. State, 91 Ala. 34, 9 So. 81, 82, contains an excellent discussion by Justice McClellan of the offense of robbery. Therein he defines robbery to be “a felonious taking of goods from the person of another, or in his presence, against his will, by violence, or putting him in fear. And this violence must precede or accompany the stealing.” In Hardis v. State, 28 Ala.App. 524, 189 So. 216, 217, in discussing the offense of robbery Judge Samford wrote: “As defined by our decisions, robbery is an offense against both person and property, and is briefly defined as the felonious taking of money or goods of value from the person of another, or in his presence, by violence or by putting him • in fear. Parks v. State, 21 Ala.App. 177, 106 So. 218.” ’ ”
The thrust of the State’s evidence was the testimony of the victim, W. O. Sanders. Although the appellant wore a mask at the time of the robbery, Mr. Sanders nevertheless was able to positively in court identify the appellant as the perpetrator of the crime, due to the fact he had known the appellant all of his life, and had seen him outside his store the morning before the *902 robbery. (R.pp. 40, 41) The State also offered the testimony of Frederick Ingram who had spent much of January 23, 1975, with the appellant. Ingram testified that at a get-together in the apartment of Keith Smith the night of January 23, 1975, the appellant admitted to him that he had robbed W. O. Sanders. (R.p. 77)
James Kennedy, Keith Smith and Lavert Lewis, all of whom were acquaintances of the appellant and had also been at Keith Smith’s apartment the night of January 23, 1975, testified in the appellant’s behalf. The nature and gist of their testimony was to the effect that they never heard the appellant say he had robbed anyone. (R.pp. 94, 100, 105)
We have carefully examined this record and beyond question, the State proved every element of the offense in question. Clay v. State, 52 Ala.App. 272, 291 So.2d 364, and authorities cited therein.
This judgment is due to be and the same is hereby
AFFIRMED.
HARRIS, DeCARLO and BOOKOUT, JJ., concur.