The appellant was indicted and convicted for the possession of amphetamine contrary to the provisions of the Alabama Uniform Controlled Substances Act. Punishment was fixed by the trial court at four years imprisonment.
Two questions are raised on appeal: (1) Whether there was probable cause to arrest the appellant and (2) whether law enforcement officers were properly permitted to testify to conversations they overheard through the use of an electronic receiving device.
On the 21st of July, 1976, narcotic agents for the State of Alabama and the Montgomery City Police Department had occasion to establish surveillance of apartments number 102 and 170, Colony Apartments, Montgomery, Alabama. The appellant was known to be living in Apartment 102 which was located in line and at the opposite end of the apartment building from Apartment 170. At approximately 5:30 that afternoon, Mike Connors, who was working with the narcotic agents, was admitted into Apartment 170. He was wearing a concealed body transmitter. The receiver to this unit was located in the back seat of an automobile parked near both apartments where the state and city agents were waiting.
Connors entered Apartment 170 and engaged in a conversation with a man named Seivers about purchasing some marijuana and "crystal meth" (crystal methamphetamine, a methamphetamine in powdered form). The narcotics agents observed the appellant walk down the sidewalk and enter Apartment 170. Three men then engaged in conversation concerning narcotics — Seivers, Connors and the appellant.
Immediately after the officers heard someone say that "he had to go get the stuff, get the crystal meth and some marijuana". They saw the appellant leave Apartment 170 and go to Apartment 102. They then saw the appellant leave his own apartment carrying a brown paper bag and walk toward Apartment 170. At this time the officers arrested the appellant and the four occupants of Apartment 170. When the appellant was stopped he was trying to hand the bag to some unidentified individual who was walking on the sidewalk. Marijuana (1.2 ounces) was found in the paper bag and amphetamines were found in the appellant's pocket in a search incident to arrest.
 I
The appellant initially contends that the trial court committed reversible error in denying the motion to suppress. It is argued that since the state failed to prove that the arrest of the appellant without a warrant was based on probable cause, any evidence seized incident to such unlawful arrest was inadmissible.
Whether a warrantless arrest is constitutionally valid depends upon "whether, at the moment the arrest was made, the officers had probable cause to make it." Beck v. State of Ohio,379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). State narcotic agents are authorized to make warrantless arrests whenever they have probable cause to believe that the person to be arrested has committed or is committing a violation of the law of the State of Alabama relating to narcotics and controlled substances. Title 22 § 258 (54), Code of Alabama 1940 (1971, Act No. 1407, approved *Page 128 
September 16, 1971). Officers are said to have "probable cause" to arrest if at the moment of arrest:
 "The facts and circumstances within their knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that (the subject of the arrest) had committed or was committing an offense." Beck, supra, 379 U.S. at 91, 85 S.Ct. at 225; See also Sellers v. State, 48 Ala. App. 178, 186, 263 So.2d 156, 163
(1972).
The appellant was in Apartment 170 when marijuana and crystal meth were being discussed. From the conversation, Officer Hobbie "could understand that there was marijuana in that apartment." Immediately after someone said that they had to go get the rest of the "stuff" the appellant left Apartment 170 and went to his own apartment. He returned carrying a brown paper bag.
The appellant contends that because the officers did not know his voice they did not have probable cause to arrest. This argument is without merit.
 "In order for an [officer] to have probable cause to arrest he need not know the identity of the person being arrested. He need only know enough to support a prudent man's belief that an offense is being committed by the person, known or unknown, whom he is arresting." United States v. Llanes, 398 F.2d 880, 883, cert. denied, 393 U.S. 1032, 89 S.Ct. 647, 21 L.Ed.2d 576 (1968).
The officers heard a conversation in the apartment about the sale of marijuana and crystal meth. They saw the appellant enter that same apartment and heard continued conversation about narcotics.
Two officers testified that they heard someone say that they were going to get the rest of the meth and marijuana; both officers saw the appellant leave the apartment immediately after these words were spoken, go to his own apartment, and return carrying a brown paper bag. At this point a prudent man would be justified in believing that a violation of the narcotics law was being committed by the person returning to the apartment. Llanes, supra.
When the arrest was made, the officers were not acting on bare suspicion. From what they had heard they knew that marijuana was present in the apartment and that someone was going to get some more. The officers had reason to believe that one felony had been committed (possession) and that another was in the process of being committed (sale). This knowledge was sufficient to constitute probable cause to support an arrest without a warrant. United States v. Lozaw, 427 F.2d 911
(C.A.N.Y. 1970). Thus the arrest of the appellant was lawful and the search of his person and consequent seizure of the amphetamine from his person and the brown paper bag containing marijuana were incidental to his lawful arrest and valid.United States v. Beigel, 370 F.2d 751, cert. denied,387 U.S. 930, 87 S.Ct. 2049, 18 L.Ed.2d 989 (2nd Cir. 1967).
 II
The appellant contends that the testimony of the two officers to the conversation they overheard constitutes rank hearsay and denied the appellant his right to confrontation.
A tape recording was made of the conversation inside Apartment 170. This tape was not used by the state in its prosecution of the appellant. After the state rested the tape was admitted as a defense exhibit. We have listened to the entire tape and found it to be virtually useless in determining what was said inside Apartment 170 due to the constant interference of a television set blaring in the background.
At trial, two officers testified to what they heard while listening to the conversation as it was received. For reasons left to our imagination, Connors, the individual inside the apartment, did not testify. We know of no requirement that such a conversation be recorded. Certainly the officers were properly allowed to testify even though the informer or undercover agent was not produced. See On Lee v. United *Page 129 States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952). Whether the officers actually heard what they testified to was a matter of credibility for the jury. United States v. Miller,316 F.2d 81, 83, cert. denied, 375 U.S. 935, 84 S.Ct. 335,11 L.Ed.2d 267, reh. denied, 375 U.S. 989, 84 S.Ct. 520,11 L.Ed.2d 476 (1963).
When a portable transmitting-and-receiving set, or other device, is used to overhear conversations, the initial question for admission of evidence involves two sets of interrelated problems: First, whether the device used is an effective means of communicating sound, and second, the identification of the alleged speaker. United States v. Sansone, 231 F.2d 887, cert. denied, 351 U.S. 987, 76 S.Ct. 1055 100 L.Ed. 1500 (C.A.N Y 1956). See also 22A C.J.S. 510 Criminal Law § 642. While the state did not produce any testimony to reliability and accuracy of the transmitting and receiving device, no objection was made to the admission of the agents' testimony on this ground.
The appellant does contend that the agents' testimony was hearsay because neither agent could say that the conversation in Apartment 170 occurred in the presence of the appellant nor could they sufficiently identify the voice of the appellant.
Officer Hobbie testified that he heard the appellant's voice in those conversations; that although he was not familiar with the voice of the appellant when he heard the transmission, he talked with him after his arrest and therefore recognized his voice. This identification was proper. United States v.Borrone-Iglar, 468 F.2d 419, cert. denied, Gernie v. UnitedStates, 410 U.S. 927, 93 S.Ct. 1360, 35 L.Ed.2d 588 (C.A.N Y 1972). Officer Brown testified that he was familiar with the appellant's voice. There was testimony from both officers that the appellant did take part in the conversation and that they did recognize his voice.
There is evidence that the appellant was in the apartment. There is also evidence that he took part in the conversation. Clearly then the testimony of the officers is not hearsay.Miller, supra. The reliability of the transmitting device and the adequacy of the identification of the voices were matters going to the weight to be given the evidence rather than to its admissibility. United States v. Walker, 320 F.2d 472, cert. denied, 375 U.S. 934, 84 S.Ct. 339, 11 L.Ed.2d 266 (1963).
We have searched the record for error and have found none. Therefore this case is due to be and is hereby
AFFIRMED.
All Judges concur.