Receiving stolen property in the second degree; sentence: fifteen years' imprisonment.
On June 25, 1980, Rhonda Minor discovered that the home of Glen Bradberry in Albertville, Alabama, had been burglarized and vandalized. Mrs. Minor, who had agreed to periodically check on the house while the Bradberrys were on vacation, immediately ran to a neighboring house and called the police. Jim Temple, an Albertville city detective, responded to Mrs. Minor's call. He searched the area upon arrival and then took photographs of the interior of the home. He found the house in a state of disarray, with drawers and closets opened and with clothes and articles strewn about the floor.
Mr. Bradberry was notified and returned to Albertville the next day. The following Monday, Mr. Bradberry went through his house making a list of missing items. Among those items was a two- to three-year-old black and white Admiral, power-pack, AC-DC television. Mr. Bradberry placed its value at $109. Later, the set was returned to him from the Albertville Police Department.
Tommy Cole, another Albertville city detective, testified he and Detective Temple questioned a Mr. Chapman Stanfield in regard to the Bradberry burglary. It appears from the record that Stanfield was the person who actually burglarized the Bradberry house. During the interrogation Stanfield placed a telephone call from police headquarters to the appellant. With Stanfield's permission the conversation was recorded and Detective Cole listened in on a telephone extension. Detective Cole stated he knew appellant, could recognize his voice, and that it was appellant to whom Stanfield was talking. Over objection Detective Cole testified as to the contents of the conversation between Stanfield and appellant. His narration in pertinent part appears in the record as follows:
 "THE WITNESS: Chapman said that — Ed, I need that television by 2:00. He *Page 1101 
said, if you had come on down there yesterday, you would have had it. Let me —
 "Q. (By Mr. Thompson) You are — when you say he, you are referring to Mr. Lankford?
 "A. Right. And Chapman said, I was afraid to. He said, why were you afraid to? Were you afraid we were going to beat you up, and Chapman said, well, you might, or something similar to that. And he said, well, we were just out riding around drinking. And he said well, — Chapman said, I have got until 2:00. I have got to get that stuff back. And he said, well, did you not find it down there where I told you it would be on the side of that road, and Chapman said, no, I couldn't find it. I found some green garbage bags and some old couches and garbage dumped out on the side of the road, but I could not find the bag with the T.V. in it. And then Ed said, well, it is there, and he said, well, go down there and get it. And Ed Lankford said, hell, no, I am not going to get it. They might catch me with it. And he said, well, tell me where it is and I will go get it. And he started — Lankford was trying to explain to him again, and Chapman said well, I went there, and I saw that particular bag, green garbage bag, and Chapman asked him to meet him there and get it for him. And that is when he said, well, I am going home. Lankford lives in Boaz, and this is, of course, in the Boaz area. And he said, I am going home in a few minutes and I will sit it on the side of the road. And that is when the conversation went on and he said, well, I have got to have it by 2:00. Chapman told Lankford that. And he said, you know, you got more of that stuff than anybody else and people are —
 "MR. JONES: Objection, Your Honor. I move that his testimony be stricken from the record.
 "THE COURT: The testimony of, you have got more than anyone else, ladies and gentlemen will be excluded. The jury will not consider that when they determine their verdict. Do you understand? Is there any problem of excluding that from your minds, any of you?
"(No response.)
"THE COURT: All right. Go ahead.
 "THE WITNESS: At that time, they went onto that, what I guess I can't discuss, and they agreed that Lankford would set it on the side of the road near a little parking road that went off of the main road where they dumped garbage. That was about all that was agreed on that particular television set."
Immediately after the telephone call, Detectives Cole and Temple left for the drop site. Temple quickly searched the area but found no television. Cole then hid the automobile while Temple hid in the underbrush. Temple heard a vehicle arrive some thirty minutes later and saw the dust it created. However, by the time he reached the drop point, the occupant of the vehicle had opened the door, dropped the television, and disappeared.
The appellant's only witness, Bobby Campbell, a television salesman and serviceman, testified that a television of the age and model of the stolen set would have a fair market value of $50.
 I
Prior to trial, but after the selection of the jury, the following comments were made by the judge to the jury:
 "THE COURT: Good morning, ladies and gentlemen. I have always heard that it is bad policy to start anything with an apology, but that is what I am going to do. First, I apologize for the heat. I know that you are probably miserable back there in the jury room, and we are going to try to do something about it. "Second, the attorneys and parties are attempting [to] settle this matter, and it is going to take just a few more minutes, but I am sure you would not mind if it were settled. I am going to ask the attorneys, the parties and the witnesses if you will, to step out of here, and we will just let the jury just sit in here. I am sorry for the inconvenience. There are *Page 1102 
some legal publications on the wall. This is not a jury room, and technically you are not supposed to be in a room where there are legal publications. I ask you — I direct you, please do not look at these books while you are waiting. Make yourselves comfortable.
 "(WHEREUPON the following proceedings took place outside the hearing of the jury.)
 "MR. JONES: I object to the statement that Your Honor made that we are going to settle the matter, attempt to settle the matter.
 "THE COURT: You have your exception. Thank you, gentlemen.
"MR. JONES: And we move for a mistrial.
 "(WHEREUPON the following proceedings took place in the presence and hearing of the jury.)
 "THE COURT: Ladies and gentlemen of the jury, I need to say one more thing to you. It may have been a slip on my part to say that the attorneys are attempting to settle this matter. Of course, that gives you no way of knowing which way it is going to be settled. I will ask you just to remove that from your mind that there was an attempt to settle the matter.
 "Are any of you unable to disregard that remark that the Court made if we do try the case? If any of you cannot put that completely out of your mind, let me know now, please.
"(No response.)
"THE COURT: Okay."
Appellant asserts the judge's comment on efforts to settle the case was improper and so prejudicial as to require reversal.
An attempt to offer to compromise a criminal prosecution is ordinarily inadmissible against the accused unless an express admission of guilt is made by him in the course of his efforts to obtain a compromise. Williams v. State, Ala.Cr.App.,354 So.2d 48 (1977), cert. denied, Ala., 354 So.2d 53 (1978);Harrison v. State, 235 Ala. 1, 178 So. 458 (1937).
 "[I]t is a fact that less penalties are sometimes agreed upon between the prosecutor and the defendant, and, however that may be, an effort to compromise is not an admission of guilt. `The true reason for excluding an offer of compromise is that it does not ordinarily proceed from and imply a belief that the adversary's claim is well founded, but rather a belief that the further prosecution of that claim, whether well founded or not, would in any event cause such annoyance as is preferably avoided by the payment of the sum offered. In short, the offer implies merely a desire for peace, not a concession of wrong done.' . . ." Sanders v. State, 148 Ala. 603, 41 So. 466 (1906).
We point out first that the reference here to an attempt to settle the case was not made in the form of evidence introduced by the prosecution against appellant for the purpose of showing a consciousness of guilt. Rather, the remark came from the trial judge, obviously not as an effort to prejudice or influence the jury, but rather as a hospitable effort by the court to put the jury at ease during the delay. We view the remark as having been made in such a manner that the jury could not have inferred from which direction, party or for what reason a settlement was being pursued. For all that appears from the trial judge's comment, the prosecutor may have sought a settlement by offering a lesser sentence in exchange for a guilty plea, which the appellant declined. Likewise, the conference could have been occasioned by defense counsel pointing out to the prosecutor some supposed fatal defect in the proceedings. The record does not show what was discussed or at whose suggestion. There was clearly no admission of guilt by the accused to be associated by the jury with the court's remark. See Kennamer v. State, 28 Ala. App. 317, 183 So. 892, cert. denied, 236 Ala. 577, 183 So. 894 (1938).
Such remarks by the trial court are to be avoided because of the great weight any statement by the trial judge has on the jury's deliberations. However, upon defense counsel's objection, the learned trial *Page 1103 
judge immediately instructed the jury to disregard the remark and questioned the jurors as to their ability to remove the statement from their consideration. The trial court obviously believed that any prejudicial effect the remark may have had was counteracted by his prompt instruction, thereby negating the necessity of declaring a mistrial. Whether a mistrial is required in such situations is within the sound discretion of the trial court, and its determination will not be reversed, absent an abuse of discretion. Keener v. State, Ala.,347 So.2d 398 (1977). The trial court's determination of the harmless effect of his remarks was further strengthened by the silence of all of the jurors in response to the court's question as to any juror's disability to disregard the remarks. Jarmon v.State, Ala.Cr.App., 333 So.2d 897 (1976).
The curative effect of the court's instructions and the jurors' silence in response thereto, viewed in light of the fact that defense counsel raised no further objection or motion following the court's instructions, indicates all the parties were satisfied that any possible prejudicial effect of the court's remark had been cured. Jarmon, supra. We find that there was no abuse of discretion in the trial court's actions and no error prejudicial to the appellant.
 II
Over continuing objections by defense counsel, the State introduced Officer Cole's testimony, quoted supra, concerning the conversation between Chapman Stanfield and the appellant. The only basis for appellant's objections was that Cole's third person narration of a conversation between two other parties was inadmissible as being hearsay. No constitutional or other objection as to Cole's means of overhearing and relating the conversation was raised by the appellant at trial or on appeal.
The record gives no indication as to why Chapman Stanfield was not called to testify concerning the conversation. However, this court has previously faced this issue under similar circumstances and determined that such a third party narration of an incriminating conversation is proper where (1) the telecommunication device is an effective means of communicating sound and (2) the third party properly identified the alleged speaker. Sexton v. State, Ala. Cr.App., 349 So.2d 126 (1977). There was no objection made as to the reliability of the telecommunication device, and Officer Cole properly identified appellant as the other party in the conversation. McGraw v.State, 34 Ala. App. 43, 36 So.2d 559, cert. denied, 251 Ala. 123, 36 So.2d 560 (1948). The testimony of Officer Cole was not objectionable as hearsay, and its introduction does not require reversal on that ground. Sexton, supra.
 III
Conflicting evidence was introduced as to the value of the stolen television. Mr. Bradberry, the owner, testified that the television had a value of $109. Bobby Campbell, a television serviceman and salesman, estimated the value of such a television to be $50. Appellant argues this conflict in the evidence necessitates a reversal of this conviction for receiving stolen property in the second degree. Section13A-8-18, Code of Ala. 1975 (amended 1979), requires the stolen property to have a value in excess of $100. Appellant argues the evidence failed to prove that the television exceeded the required $100 in value necessary for a conviction under the statute.
Testimony as to market value is in the nature of opinion evidence. A witness need not be an expert or dealer in a particular article in order to testify as to its value, if he has had the opportunity to form a correct opinion. Thomas v.State, Ala.Cr.App., 338 So.2d 1045 (1976). Such opinion evidence is not conclusive, and it therefore remains with the jury as the trier of fact to be considered like all other evidence. The evidence is viewed in light of the knowledge *Page 1104 
and experience of the jury, which factors are to be relied upon by the jury in determining the true value of the property.State v. Crawford, 277 Ala. 568, 173 So.2d 109 (1965). The owner, Mr. Bradberry, was clearly familiar with the purchase price, age, past use, and condition of the television, and as such he was competent to testify as to its value. We cannot say the jury's determination here as to value is without ample support from the evidence.
No prejudicial error to the substantial rights of appellant having been found in our review, this case is affirmed.
AFFIRMED.
All the Judges concur.
 *Page 1