This is a pre-trial appeal by the State pursuant to Temporary Rule 17, A.R.Cr.P., from the trial judge's holding that, at the time of the arrest, the police officers did not have probable cause to arrest the defendants and charge them with third degree burglary. We find that he correctly applied the law and affirm his ruling.
While on routine patrol, two Cullman police officers stopped at a deserted chicken processing plant that had been the subject of recent vandalism reports. They found a locked vehicle parked by the plant, but they were not able to ascertain who was the registered owner.
They decided to inspect the interior of the building to see if someone was inside. They found that all of the exterior doors and windows were opened, and that no one was inside. One of the officers observed two individuals walking along some railroad tracks and away from the building. A puddle of water was observed on a loading deck on the outside of the building with a wet shoe print leading away from the puddle towards the railroad tracks. At the officers' request, a third officer stopped the two individuals a few blocks away. The first two officers arrived at that location and ascertained that the two men were Roger Dale Hanson and Phillip Terry Hanson, the defendants herein. One of the defendants was wearing shoes that had a sole pattern consistent with the wet shoe prints observed on the loading dock. The officers asked the defendants "what [they were] doing, where [they were] headed or something along those lines." The defendants' response was to ask what was going on and why were they being bothered. At this point, the defendants were frisked, forced into the patrol car, and transported to the police department, where they were interrogated. During the interrogation one of the defendants confessed to trespassing, but not to committing a burglary. After interrogation, they were locked in a holding cell. According to one of the officers, "[a]t that time, no," they were not under arrest; the defendants were placed in a cell "to *Page 622 
detain" them, but they were not free to leave if they wanted to. One of the officers testified that after investigating the incident further he "went back there [about fifteen to thirty minutes] later and told him he was under arrest for burglary in the third degree."
Later that afternoon, the officers determined that partitions that had divided one of the rooms into offices had been dismantled, and the lumber and paneling stacked in piles. They also determined that the car parked outside the plant was registered to one of the defendants.
The issues in this case are ones of federal constitutional law, and are controlled by federal cases interpreting that law. The pivotal question that must first be addressed is when the defendants were "arrested." The police officers testified that they did not arrest the defendants until after the interrogations and after they had investigated the situation further. However, a policeman's testimony about when he effected an arrest is not necessarily determinative of when an arrest actually occurred. "A policeman's unarticulated plan [regarding when to arrest someone] has no bearing on the question whether a suspect was `in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."Berkemer v. McCarty, ___ U.S. ___, 104 S.Ct. 3138, 3152,82 L.Ed.2d 317 (1984). See also Cupp v. Murphy, 412 U.S. 291,93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). McCants v. State,459 So.2d 992 (Ala.Cr.App. 1984). Here the defendants were walking down a public street when the police officers stopped them, questioned them, and, even though no incriminating statements were uttered, the defendants were forced into the back of a patrol car and taken to the police station for interrogation. "These circumstances surely amount to a show of official authority such that `a reasonable person would have believed he was not free to leave.'" Florida v. Royer, 460 U.S. 491, 502,103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983), quoting United States v.Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877,64 L.Ed.2d 497 (opinion of Stewart, J.). Our determination of when the arrest actually occurred parallels a decision of the United States Supreme Court in a case that was factually similar:
 "[T]he detention of petitioner was in important respects indistinguishable from a traditional arrest. Petitioner was not questioned briefly where he was found. Instead, he was taken from a neighbor's home to a police station, and placed in an interrogation room. He was never informed that he was `free to go'; indeed, he would have been physically restrained if he had refused to accompany the officers or had tried to escape their custody. The application of the Fourth Amendment's requirement of probable cause does not depend on whether an intrusion of this magnitude is termed an `arrest' under state law. The mere facts that petitioner was not told he was under arrest, was not `booked,' and would not have had an arrest record if the interrogation had proved fruitless, while not insignificant for all purposes, see Cupp v. Murphy, 412 U.S. 291 [93 S.Ct. 2000, 36 L.Ed.2d 900] (1973), obviously do not make petitioner's seizure even roughly analogous to the narrowly defined intrusions involved in [stop and frisk situations]."
Dunaway v. New York, 442 U.S. 200, 212-13, 99 S.Ct. 2248,2256-57, 60 L.Ed.2d 824 (1979). We find that the defendants were effectively arrested when they were forced into the patrol car. That was the point at which "the Fourth Amendment guarantee of freedom from `unreasonable searches and seizures' [was] clearly implicated." Cupp v. Murphy, supra,412 U.S. at 294, 93 S.Ct. at 2003.
The next question then becomes whether the police officers had probable cause to arrest the defendants for third degree burglary. Alabama law allows a police officer to arrest an individual when "he has reasonable cause to believe that the person arrested has committed" a felony. § 15-10-3, Code ofAlabama 1975. *Page 623 
"Reasonable cause" and "probable cause" mean the same — they refer to the same quantum of evidence. See Stacey v. Emery,97 U.S. 642, 646, 24 L.Ed. 1035 (1878): "If there was a probable cause of seizure, there was a reasonable cause. If there was a reasonable cause of seizure there was a probable cause."
The determination of what amounts to probable cause is based on a "reasonable man" standard. "Probable cause exists where `the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160,175-76, 69 S.Ct. 1302, 1310-11, 93 L.Ed. 1879 (1949), quotingCarroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288,69 L.Ed. 543 (1925) (bracketed material in Brinegar). Accord,Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171,4 L.Ed.2d 134 (1959) ("Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed"), and Husty v.United States, 282 U.S. 694, 701, 51 S.Ct. 240, 242,75 L.Ed. 629 (1931) (to show probable cause, "[i]t is enough if the apparent facts which have come to his [the officer's] attention are sufficient, in the circumstances, to lead a reasonably discreet and prudent man to believe" that a crime has been committed). See also, McCants v. State, supra, Parker v. State,397 So.2d 199 (Ala.Cr.App.), cert. denied, 397 So.2d 203 (Ala. 1981), Young v. State, 372 So.2d 409 (Ala.Cr.App. 1979), Knightv. State, 346 So.2d 478 (Ala.Cr.App.), cert. denied,346 So.2d 483 (Ala. 1977), and cases collected therein. However, it is not necessary for an officer to then have enough evidence/information to support a conviction for that offense.Brinegar v. United States, supra; Wong Sun v. United States,371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). See Illinoisv. Gates, 462 U.S. 213, 235, 103 S.Ct. 2317, 2330,76 L.Ed.2d 527 (1983) ("[I]t is clear that `only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'"), quoting Spinelli v. United States,393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969). See alsoMoore v. State, 415 So.2d 1210 (Ala.Cr.App. 1982); Dolvin v.State, 391 So.2d 666 (Ala.Cr.App. 1979), aff'd, 391 So.2d 677
(Ala. 1980); Tice v. State, 386 So.2d 1180 (Ala.Cr.App.), cert. denied, 386 So.2d 1187 (Ala. 1980); Young v. State,372 So.2d 409 (Ala.Cr.App. 1979).
What is required is that the probable cause to arrest exist at the time of the actual arrest. "When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would `warrant a man of reasonable caution in the belief' that an offense has been committed."Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 228,13 L.Ed.2d 142 (1964). See also Clements v. State, 390 So.2d 1131
(Ala.Cr.App.), cert. denied, 390 So.2d 1136 (Ala. 1980); Foy v.State, 387 So.2d 321 (Ala.Cr.App. 1980); Braxton v. State,350 So.2d 753 (Ala.Cr.App. 1977); Sexton v. State, 349 So.2d 126
(Ala.Cr.App. 1977). At the moment of the actual arrest of the defendants herein, the officers had observed the defendants walking along the railroad tracks in a direction away from the processing plant, that one of the defendants was wearing shoes that had a sole print consistent with wet prints observed on the outside of the building, and that one of the defendants had a flashlight in his pocket during daylight hours. Such is insufficient information to amount to a finding of probable cause to arrest an individual for third degree burglary.
It was not until later that afternoon that the officers discovered that lumber and paneling had been removed from the walls of the building, and that the car parked next to the building was registered to one of the defendants. This after-acquired information may not be used to justify an earlier arrest made when probable cause was lacking. Rios v.United States, *Page 624 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); Henry v.United States, supra; United States v. Di Re, 332 U.S. 581,68 S.Ct. 222, 92 L.Ed. 210 (1948); Duncan v. State, 278 Ala. 145,176 So.2d 840 (1965). Nor are the defendants' admissions made during the custodial interrogation admissible to show probable cause for the arrests. "[S]tatements given during a period of illegal detention are inadmissible even though voluntarily given if they are a product of the illegal detention and not the result of an independent act of free will." Florida v.Royer, supra, 460 U.S. at 501, 103 S.Ct. at 1326. Accord,Dunaway v. New York, supra; Brown v. Illinois, 422 U.S. 590,95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Wong Sun v. United States, supra.
The fact that the police officers believed that they were acting properly does not cure the defect of having no probable cause to arrest. "[G]ood faith on the part of the arresting officers is not enough." Henry v. United States, supra,361 U.S. at 102, 80 S.Ct. at 171. "If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be `secure in their persons, houses, papers, and effects,' only in the discretion of the police." Beck v. Ohio, supra, 379 U.S. at 97, 85 S.Ct. at 229. That explains why a forced "detention for custodial interrogation — regardless of its label — intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest[s]." Dunaway v. New York, supra,442 U.S. at 216, 99 S.Ct. at 2258.
Thus, our holding is that the trial court was correct when it granted the defendants' motion to suppress due to the lack of probable cause to arrest when the actual arrests were made. This holding is consistent with the numerous United States Supreme Court cases cited and with the spirit of the Fourth Amendment; "Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed `arrests' or `investigatory detentions.'" Davis v.Mississippi, 394 U.S. 721, 726-27, 89 S.Ct. 1394, 1397,22 L.Ed.2d 676 (1969).
AFFIRMED.
All the Judges concur. *Page 1171